### FRANK GRAHAM v. STATE
No. A-4323. Opinion Filed Jan. 28, 1924.
(222 Pac. 273.)

(Syllabus.)

**Intoxicating Liquors—Unlawful Sale—Insufficiency of Evidence.** In a prosecution for selling intoxicating liquor, evidence reviewed, and held insufficient to support a verdict of guilty.

Appeal from County Court, Cotton County; J. C. Norman, Judge.

Frank Graham was convicted of a violation of the prohibitory liquor law, and he appeals. Reversed.

D. B. Madden and Walter Hubbell, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore and G. B. Fulton, Asst. Attys. Gen., for the State.

DOYLE, J. The plaintiff in error was convicted upon an information charging that he did sell one pint of corn whisky to O. L. Davis for $4. The jury failed to agree upon the punishment. The judgment of the court was that defendant be confined in the county jail for a period of 60 days and pay a fine of $200. To reverse the judgment he has appealed to this court.

There is but a single question which we think requires discussion on this appeal, and that is the insufficiency of the evidence to sustain the conviction.

It appears that defendant, Frank Graham, had resided in the town of Temple for about 14 years. The complaining witness, O. L. Davis, is a barber and had been so employed in the town of Temple for a short time prior to the 10th day of July, 1921. On that day said Davis was arrested by Deputy Sheriff J. D. Graham for transporting liquor. Shortly after his arrest he was left alone with Officer Carty, while Officer Graham went to telephone the sheriff. During Graham's absence Davis told Carty that he had purchased the whisky found in his possession from a negro. When Graham returned, Davis went with the officers to the negro section of Temple, and there pointed out a negro as the man that sold him the whisky. The negro was arrested and held until Davis decided that he was mistaken in the man, they took him back a second time to the negro section of the town, and he pointed out another negro as the man, and the officers arrested and likewise released him also. On the same day Davis was placed in the county jail of Cotton county at Walters. Three days later he swore to an information charging defendant, Frank Graham, with selling him the whisky in question.

It is undisputed that, in consideration of his making said complaint and testifying on behalf of the state in this case, said Davis was promised immunity by the county attorney, and was released after defendant's conviction.

It further appears that on the 8th day of September, 1921, this case was called for trial, and both state and defendant announced ready, and a jury was sworn to try the case. After both state and defendant made their opening statements to the jury, the complaining witness, Davis, was called to testify, but he did not respond and could not be found. Thereupon the court dismissed the jury, and defendant agreed that the case be continued for the term. .

Two or three months later the said Davis was apprehended and brought back to Cotton county, and held in the county jail until the case was tried, on the 20th day of February, 1922.

O. L. Davis testified:

"I bought one pint of corn whisky from defendant in the barn, and paid him $4 for it. I was walking up the street when Officer J. D. Graham arrested me, I told Officer Graham that I bought it from Frank Graham. I did not tell Officer Carty that I got it from a negro."

His cross-examination shows that he had been convicted of burglary in Montague county, Tex.

The only other witness for the state, Officer J. D. Graham, testifies that witness Davis did not tell him that he got the whisky from defendant, Graham.

The state rested, and defendant moved for a directed verdict, which was overruled.

Defendant testified in his own behalf and denied the charge made by the complaining witness, and his testimony was in no manner weakened or impeached.

**J. W. Davis** testified:

"I live at Sunset, Tex. I have known O. L. Davis all his life. I am acquainted with his reputation in the community where he resides for truth and veracity, and that reputation is bad. I am here on cotton business."

**A. B. Davis** testified:

"I live at Sunset, Tex. I am with King-Collie out of Dallas. I have known O. L. Davis all his life. I am acquainted with his reputation for truth and veracity, and it is bad. I have heard maybe a hundred people say it was bad. He was charged with perjury in Texas."

**W. A. Carty** testified:

"I insisted on O. L. Davis telling me where he got the whisky, and he refused. I put the inquiry this way, 'Did you get it from a negro or white man?" and he says, 'negro.' And I says, 'We will just go and hunt the negro,' and we got into the car and passed a negro by the section house. He said, 'There is the negro,' 'and I made the negro get in the car and took them back to the city hall. I says, 'Davis, are you sure this is the negro?' He says, 'I don't believe that is the negro, but I believe I would know him.' We went and got another negro that he pointed out in the crowd as the man, and brought him back, again I asked him, 'Are you sure this is the negro?' and he says, 'No; that is not the negro,' and we just gave up."

The foregoing is a fair resume of the testimony in the case. An analysis of the same leads to the conclusion that the verdict of the jury was the result of passion or prejudice and not of that calm and deliberate consideration of the testimony which the law requires.

It is the well-settled doctrine in this state that a conviction based upon the uncorroborated testimony of a self-confessed criminal, who admits in his testimony that he was receiving immunity by reason of such testimony, will be revers-

ed, when such witness is impeached for truthfulness and flatly contradicted by other witnesses, whose credibility is not impeached. Mask v. State, 2 Okla. Cr. 283, 101 Pac. 293; Shive v. State, 7 Okla. Cr. 693, 126 Pac. 579.

In Groves v. State, 23 Okla. Cr. 336, 214 Pac. 736, we said:

"While this court is to the fullest extent committed to the doctrine 'that the credibility of witnesses and the weight and value to be given their testimony is a question solely for the jury's determination,' yet this court will not hesitate to reverse a judgment of conviction where the evidence is not sufficient to support the verdict, or where the evidence in the case so greatly preponderates in favor of the defendant that upon careful consideration thereof there remains such grave and serious doubt of the guilt of the defendant that leads to the conclusion that the verdict of the jury is the result of passion or prejudice, and not of that calm and deliberate consideration of the evidence which the law requires."

One of the established modes of impeaching a witness is by proving that he has made statements out of court, contrary to his testimony. In this case that was done by the only other witness for the state; also by the testimony of Officer Carty.

It also appears that he absconded when the case was first called for trial, and defendant voluntarily waived the question of jeopardy, and on his trial presentel as complete a defense as any man, however innocent, would ordinarily be able to present.

In our opinion the evidence in this case is clearly insufficient to sustain the conviction.

Accordingly the judgment is reversed.

MATSON, P. J., and BESSEY, J., concur.